JOSEPH CARBONE, Sr., AND DEPARTMENT OF LABOR AND INDUSTRY, DIVISION OF EMPLOYMENT SECURITY, DISABILITY INSURANCE SERVICE, PLAINTIFFS-RESPONDENTS, v. ATLANTIC YACHTING COMPANY AND AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA, DEFENDANTS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued September 8, 1952—Decided September 10, 1952.

Before Judges JAYNE, PROCTOR and SCHETTINO.

*Mr. Harry Miller* argued the cause for appellants.

*Mr. William C. Nowels,* Deputy Attorney-General, argued the cause for respondent (*Mr. Theodore D. Parsons,* Attorney-General of New Jersey).

The opinion of the court was delivered by

JAYNE, S. J. A. D. Pursuant to *Rule* 3:81–8 the defendants request us to review the legal and factual propriety of the conclusions embodied in the final determination and resultant order of the hearing officer of the Department of Labor and Industry, Division of Employment Security, Disability Insurance Service, in this proceeding.

The order in effect obliges the American Casualty Company of Reading, Pennsylvania, in its contractual capacity as the carrier under a private insurance plan approved under the provision of the Temporary Disability Benefits Act (*R. S.* 43:21–25, *et seq*) to pay disability benefits to the plaintiff Joseph Carbone, Sr.

Most of the basic information relative to the subject matter of the proceedings is imparted in the decision rendered in a former appeal. 14 *N. J. Super.* 269 (*App. Div.* 1951). To warm it over again is unnecessary.

There are two questions addressed to us. The first is of a legalistic complexion. Was the plaintiff's claim filed within the prescribed time? The pertinent facts are not in dispute.

The plaintiff terminated the services of his employment on June 27, 1950. He received his first care and treatment thereafter by "a legally licensed physician" on August 2, 1950. He filed his claim on August 30, 1950, pursuant to which he has sought disability benefits for a period beginning August 2, 1950, and including November 24, 1950.

Considerations of the public welfare induced the Legislature to enact the statute entitled "Temporary Disability Benefits Law" and to declare that it should be liberally construed. *R. S.* 43:21–25. Statutes, such as this, are designed to meet the exigencies of the social and economic conditions of the time. The statute contains, however, the limitational provisions that no benefits shall be payable under the State plan to any person:

"(a) for the first seven consecutive days of each period of disability, or for more than twenty-six weeks with respect to any one period of disability, or for any period of disability which did not commence while the claimant was a covered individual;

(b) for any period during which a claimant is not under the care of a legally licensed physician." (*R. S.* 43:21–39)

The statute expressly recognizes the privilege of an employer by a contract of insurance to provide a private plan for the payment of disability benefits by a duly authorized insurance company, but the approval of the private plan by the Division of Employment Security is required, and the approval is withheld if the eligibility requirements for benefits under the insurance policy are more restrictive than those prescribed by the State plan. *R. S.* 43:21–32.

The plaintiff's employer, Atlantic Yachting Company, under a duly approved private plan held a contract of insurance issued to it by the American Casualty Company which embodied the following pertinent provisions:

## "ARTICLE I. BENEFITS.

The benefits as set forth in the schedule below shall be paid to an Employee while insured hereunder, in accordance with his classification, and after the 'waiting period,' if any, provided he is prevented from performing every duty of his occupation as the result of accidental bodily injury, sickness or disease, which does not entitle him to benefits under any Workmen's Compensation or Occupational Disease Law, and *requires the regular care and attendance of a legally qualified physician, surgeon or dentist.* (Italics ours.)

\* \* \* \* \* \* \* \*

## ARTICLE IX. STANDARD PROVISIONS.

\* \* \* \* \* \* \* \*

3. Written notice of injury or of sickness upon which claim may be based must be given to the Company within thirty days of the date of the *commencement of the first loss for which benefits arising out of each such injury or sickness may be claimed.* (Italics ours.)

4. Notice given by or in behalf of the claimant to the Company at Reading, Pennsylvania, or to any authorized agent of the Company, with particulars sufficient to identify the insured Employee, shall be deemed to be notice to the Company. Failure to furnish notice within the time provided in this Policy shall not invalidate any claim if it shall be shown not to have been reasonably possible to furnish such notice and that such notice was furnished as soon as was reasonably possible.

\* \* \* \* \* \* \* \*

6. Affirmative proof of hospital confinement or of loss of time on account of disability for which claim is made must be furnished to the Company within ninety days after the termination of the period for which claim is made. Affirmative proof of any other loss on which claim may be based must be furnished to the Company not later than ninety days after the date of such loss."

It becomes immediately manifest that under the State plan the claimant might legitimately claim disability benefits only for the period during which he "is under the care of a legally licensed physician," and under the provisions of the insurance policy issued in conformity with the private plan such benefits could only be claimed for a sickness that "requires the regular care and attendance of a legally qualified physician, surgeon or dentist." *Vide, Bogda v. Chevrolet-Bloomfield Div., G. M. Corp.,* 8 *N. J. Super.* 172, 183 (*App. Div.* 1950).

The hearing officer resolved that the "loss for which benefits arising out of" the alleged sickness might be logically and legitimately claimed accordingly commenced when the plaintiff came "under the care of" or required "the regular care and attendance of" a qualified physician. He determined from the evidence that the medical treatment commenced on August 2, 1950, and that notice of the illness upon which the claim was based was given within time on August 30, 1950. We are not persuaded that his conclusion in this particular was erroneous.

 The second point of appeal pertains to the factual determination of the hearing officer.

It must be at once realized that it is only where we are satisfied that the interests of justice require it, that we are empowered to make independent findings of fact. *Rule* 3:81–13, with the admonitions expressed in *Rule* 1:2–20.

The defendants' criticism of the determination of the agency, as we perceive it, is that there is an inadequacy of evidence to establish (a) a proximate causal relationship between the cessation of employment and the plaintiff's illness, and (b) to disclose that the illness either prevented the plaintiff "from performing every duty of his occupation" or rendered him "totally unable to perform the duties of his employment."

It would be injudicious for us, as counsel for the appellants in the circumstances suggests, to confine our survey of the evidence appertaining to those material issues solely to the answers given by the attending physician to the hypothetical questions addressed to him. We must in this as in all other similar inquiries explore the depths of all of the ingredients of the proof and extract even from the recesses all of the reasonable inferences thereby logically produced.

The mental affliction of which the plaintiff had been a victim since 1948 was classified as involutional melancholia. He was hospitalized for that dejection both before and shortly after the discontinuance of his employment on June 27, 1950.

His physician expressed the following description of his condition on August 2, 1950:

"A. His depression was so severe he talked of not wanting to go on and talked of suicide.

Q. What did you prescribe?

A. I thought he was too ill and depressed to go home and be left to his own dealings, so I had him admitted to St. Luke's Hospital, Philadelphia, 8–29–50."

Other significant quotations excised from the testimony of the attending physician are informative:

"This man had so many recurrent episodes of depression that it is quite feasible and quite possible from time to time from the time I saw him on 4–20, when he wasn't well, 4–20–50, up to the time I saw him again on 8–2–50, that he would have episodes of depression which would incapacitate him. In other words, from the time he went out of Jefferson in 1949, he always had recurrent episodes of depression. This man had a neurotic pattern as long as I have known him.

\* \* \* \* \* \* \* \*

From August 2 to November 24 I think this man was so depressed and preoccupied with his mental attitude that he wasn't capable of efficient work."

Moreover the testimony of the plaintiff's wife relative to her husband's illness on and following June 27, 1950, does not escape our attention.

It suffices to state that the factual determinations of the hearing officer do not exhibit in the light of the sustaining evidence any nimbleness of thought or fancy that justifies us in the interest of justice to dissolve his findings.

The determination of the Disability Insurance Service, Division of Employment Security of the State Department of Labor and Industry, is accordingly affirmed.